IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OSVALDO M. ORTIZ-BOU<br>Plaintiff<br>vs<br>UNIVERSIDAD AUTONOMA DE GUADALAJARA and INTERNATIONAL EDUCATIONAL PROGRAMS<br>Defendants | CIVIL 04-2279CCC |

**OPINION AND ORDER**

Before the Court are several pending motions, some of which seek the outright dismissal of this civil rights/diversity action filed since November 17, 2004. A recitation of the salient facts, as described in the allegations of the Amended Complaint filed on December 8, 2004 (docket entry 8), follows.

Plaintiff Osvaldo Miguel Ortíz-Bou (Ortíz) is a medical student who since August 2000 has been enrolled at the School of Medicine of defendant Universidad Autónoma de Guadalajara (UAG) in Jalisco, México. Plaintiff submitted his application for admission in March 2000 at an office of UAG located in San Juan, Puerto Rico,[1] and was also later interviewed in that same office as part of the admission process. Plaintiff was eventually admitted to UAG in July 2000, and shortly thereafter applied for federal financial aid through UAG's office in Puerto Rico. Plaintiff has represented that UAG is a foreign higher education institution eligible under the Federal Family Education Loan Program (FFELP) as it has entered into a Program Participation Agreement (PPA) with the United States Department of Education, and that throughout his

---

[1] According to the allegations of the original complaint (docket entry 1), UAG shared this office with its agent for marketing and admissions in Puerto Rico, International Educational Programs (IEP), who was also included as a defendant. The amended complaint eliminated IEP as a defendant as part of plaintiff's admitted attempt to create diversity jurisdiction (see plaintiff's Motion Complying With Order to Show Cause, docket entry 9, at p. 3), since it had been identified in the original complaint as "a corporation organized and existing under the laws of the Commonwealth of Puerto Rico." Complaint (docket entry 1), at p. 2, ¶ 3.3.

CIVIL 04-2279CCC                                              2

medical studies at UAG he received financial assistance from FFELP which included federal Stafford loans.

During the initial orientation at UAG in August 2000, plaintiff was advised by defendant that while all the students originating from the United States and Puerto Rico had been enrolled in a special International Students' Program, where all courses were conducted in English, he and the other Puerto Rican students could opt to study in the Latin Students' Program, where the courses were offered in Spanish. As Ortíz felt he was not sufficiently proficient in English, he elected to study in the Latin Students' Program.

It appears that starting in 2001, UAG established as part of its curricular requirements for the students enrolled in the International Program that they had to approve either the U.S. Medical Licensing Examination (USMLE) or Puerto Rico's "Reválida" Exam at the conclusion of their fourth semester and before registering for their fifth semester. Such a requirement, however, was not established for the students enrolled in UAG's Latin Program.

In July 2004, plaintiff Ortíz registered for his sixth semester and paid tuition for the sixth and seventh semesters. During his sixth semester, Ortíz took and approved theoretical courses in gynecology/obstetrics, pediatrics and surgery, and also participated and approved clinical rotations in gynecology/obstetrics and pediatrics. Then, when he was about to start the clinical rotation in surgery, UAG prevented him from doing so because he had yet to approve either the USMLE or the Puerto Rico "Reválida". Ortíz alleges that when he inquired about the basis for UAG's decision given that he was enrolled in the Latin Students' Program, he was simply told that said new requirement applied to all Puerto Rican students irrespective of the program in which they were enrolled. He also alleges that when he asked when was that requirement established and how it was notified to him and the other Puerto Rican students enrolled in the Latin Students' Program, the response he received was that he should had found out by the rumors that had been circulating around UAG's campus for quite some time.

CIVIL 04-2279CCC                                        3

      Plaintiff further avers that while he has complied with all the academic requirements of the Latin Students' Program for participation in the clinical rotation in surgery, he was not able to start it as scheduled in November 2004 for the sole reason that he is Puerto Rican. He indicates that, in contrast, all the non-Puerto Rican students enrolled in the Latin Students' Program who, as him, completed the theoretical courses in gynecology/obstetrics, pediatrics and surgery, and approved the clinical rotations in gynecology/obstetrics and pediatrics, were allowed to begin their clinical rotation in surgery in November 2004 without being required to take and approve the USMLE or the Puerto Rico "Révalida".

      Based on these facts, plaintiff has sued UAG under several legal theories. He claims that UAG unilaterally modified its curricular requirements by requiring him to take and approve the USMLE or Puerto Rico's "Reválida" before allowing him to participate in the surgery rotations only because he is Puerto Rican, and that by doing so it violated the rights conferred to him by the Civil Rights Act of 1991 to make and enforce the contract that the parties executed in Puerto Rico upon his admission to UAG. See Amended Complaint, p. 7, ¶ 5.3. He also avers that said action constituted willful discrimination against him on account of race and/or national origin. Id., at p. 8, ¶ 6.2. A claim under Article II, Sections 1, 7 & 8 of the Constitution of Puerto Rico seeking to redress alleged damages to his dignity, honor and reputation was also raised. Id., at p. 8, ¶ 7.2. In addition, plaintiff claims that as UAG failed to notify him about its requirement that either the USMLE or the "Reválida" be approved before continuing his studies, it violated the provisions of the Higher Education Act (HEA), 20 U.S.C. § 1001 et. seq., and/or its implementing regulations, allowing him to recover the consequential damages allegedly suffered under either an implied private cause of action under said law (see Amended Complaint, at pp. 9-11, ¶¶ 8.1-8.11) or as a tort claim under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141 (see Amended Complaint, p. 11-12, ¶¶ 9.1-9.6). Finally, plaintiff has raised a retaliation claim, imputing that one day after UAG was served with process in this action one of its officers sent a letter to the Mexican immigration authorities

CIVIL 04-2279CCC                                        4

informing that he had failed to comply with its academic requirements which resulted in the cancellation of his student visa and his inability to return to Mexico to resume his studies. Id., at pp. 12-13, ¶¶ 10.1-10.8.

On November 18, 2004, upon reviewing plaintiff's Motion for Preliminary Injunction filed the day before (docket entry 5), we ordered him to show cause why the complaint should not be dismissed for lack of federal question jurisdiction (docket entry 5). Plaintiff complied on December 8, 2004 (docket entry 9), justifying his assertion of federal jurisdiction for some of his claims but also announcing that he had amended the original complaint to create diversity jurisdiction by dropping IEP as a defendant as well as adding new causes of action under the HEA and for retaliation. UAG responded to plaintiff's motion on December 23, 2004 (docket entry 12), refuting plaintiff's arguments in support of jurisdiction and also requesting dismissal of the action based on the doctrine of forum non conveniens. This limited demand for dismissal was followed on January 10, 2005 by a more comprehensive motion to dismiss based on improper venue and the failure to state claims upon which relief could be granted (docket entry 14). It is to all these motions, which are still pending, to which we now turn our attention.

At the outset, we note that since the requests for dismissal premised on the inconvenience of the forum and improper venue would require us to consider a choice of law/forum document signed by the plaintiff, which is extraneous to the pleadings, we will address first the contention that said pleadings, even if taken as true, fail to state claims meriting relief. Hence, we now examine each of plaintiff's claims seriatim.

As noted above, plaintiff's first cause of action seeks declaratory and injunctive relief based on the assertion that UAG's unilateral modification of its curricular requirements by requiring from its Puerto Rican students the approval of the UMSLE or "Reválida" at a particular stage of their medical studies "constitute[d] an egregious violation of the rights conferred by the Civil Rights Act of 1991 to make and enforce the contract that was accepted by the parties and perfected back in 2000 here in Puerto Rico when plaintiff was admitted unto [UAG]."

CIVIL 04-2279CCC                                        5

Amended Complaint (docket entry 8), p. 7, ¶ 5.3.  Plaintiff later explained in its Motion Complying With Order to Show Cause (docket entry 9), at p. 3, that said claim was premised specifically on 42 U.S.C. §1981, which provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts..."  The problem here, as UAG has correctly pointed out, is that plaintiff is not alleging that UAG discriminated against him in the making and/or enforcement of the contract here in Puerto Rico back in 2000, but that the discrimination ensued when UAG unilaterally modified the curricular requirements and prevented him from starting the clinical rotation in surgery when he was already enrolled and attending said school in Mexico.  Given these circumstances, we fail to see how we may extend the protections afforded by 42 U.S.C. § 1981 in particular, or by the Civil Rights Act of 1991 in general, to alleged discriminatory acts that manifested themselves in a foreign country.  The Supreme Court, after all, has applied a presumption against extraterritoriality to federal statutes based on the "assumption that Congress is primarily concerned with domestic conditions." Foley Bros. V. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 577 (1949).  Plaintiff has not demonstrated to us, nor have we found any indication in the statute or its legislative history, that when Congress legislated the Civil Rights Act it meant it to apply beyond the territorial jurisdiction of the United States.  Quite to the contrary, section 1981, the specific section on which plaintiff relies, clearly expresses that the rights it recognizes are valid "in every State and Territory."  See Theus v. Pioneer Hi-Bred International, Inc., 738 F.Supp. 1252, 1254 (S.D. Iowa 1990) ("The plain language of § 1981 does not reveal any intent to extend extraterritorial coverage to victims of racial discrimination.")  See also Foley, 336 U.S. at 285, 69 S.Ct. At 577 (holding that the "Eight Hour Act" did not apply extraterritorially, since "nothing in the Act itself ... nor in the legislative history ... [led] to the belief that Congress entertained any intention other than the normal one.")  See also  Benz v. Compañía Naviera Hidalgo, S. A., 353 U.S. 138, 147, 77 S.Ct. 699, 704 (1957) (denying extraterritorial effect to the Labor Management Relations

CIVIL 04-2279CCC                                           6

Act); Pfeiffer v. Wm. Wrigley Jr. Co., 755 F.2d 554, 557 (7th Cir. 1985) (denying extraterritorial effect to the Age Discrimination in Employment Act); McKeel v. Islamic Republic of Iran, 722 F.2d 582, 589 (9th Cir. 1983) (limiting Foreign Sovereign Immunities Act to territorial jurisdiction).  Since neither plaintiff nor UAG were within a "State [or] Territory" when the alleged discriminatory event(s) took place, plaintiff's first cause of action fails to state a claim for which relief may be granted in this Court.

Plaintiff's second cause of action, which imputes UAG with having wilfully discriminated against him "on account of race and/or national origin for the mere and only fact that he is Puerto Rican," Amended Complaint (docket entry 8), at p. 8, ¶ 6.2, is also based on UAG's unilateral modification of its curricular requirements in Mexico and subsequent impediment to plaintiff's continuation of his medical career in its school.[2]  While plaintiff fails to state under which statute it is brought, given that the discriminatory conduct alleged is identical to that which founded his first cause of action it is fair to assume that remedies are sought under the same federal law, 42 U.S.C. § 1981.  Hence, it partakes of the same problem: the alleged illegal conduct took place in a country where the federal law which prohibits it does not apply.  As a result, plaintiff's second cause of action also fails to state a claim for which relief may be granted in this Court.

Plaintiff's third cause of action is not based on a federal law, but rather on the Constitution of Puerto Rico.  He claims that the conduct of UAG deprived him "of the rights conferred by Article II, Sections 1, 7 and 8 of the Puerto Rico Constitution, which was designed to protect the plaintiff from damages to his dignity, honor and reputation."  Amended

---

[2] Indeed, the Amended Complaint is devoid of allegations that UAG discriminated against plaintiff during his interview, evaluation or selection, or at any other stage of his admission process, all of which appears to have been conducted in the Commonwealth.

CIVIL 04-2279CCC                              7

Complaint (docket entry 8), at p. 8, ¶ 7.2.³  Again, plaintiff's claim is premised on the curriculum modification/studies interruption that UAG effectuated in Mexico, where the Puerto Rican constitutional protections are not extensive.  Cf. Puerto Rico Constitution, Art. I, § 3. Indeed, plaintiff has failed to cite a single case suggesting that the Constitution has such an extraterritorial scope.  Accordingly, plaintiff's third cause of action also fails to state a claim for which relief may be granted in this Court.

Plaintiff's fourth cause of action is self-defined by him as an implied cause of action under the Higher Education Act, 20 U.S.C. § 1070(a) et. seq.  See Amended Complaint (docket entry 8), at p. 9.  Plaintiff avers that UAG had entered into a PPA with the U.S. Department of Education, and that pursuant to said agreement and the applicable provisions of HEA and its implementing regulations, UAG was required to notify him of the changed curricular requisites which eventually prevented him from continuing with his medical studies. Id., at pp. 9-11, ¶¶ 8.2-8.11.  It is apodictic, however, that the HEA and the regulations promulgated thereunder do not create a private cause of action, express or implied, and that Congress has vested exclusive enforcement authority of its provisions in the Secretary of Education.  L'ggrke v. Benkula, 966 F.2d 1346, 1348 (10th Cir. 1992).  See also Labickas v. Ark. State Univ., 78 F.3d 333, 334 (8th Cir. 1996); Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1485 (9th Cir. 1995); Gibbs v. SLM Corporation, 336 F.Supp. 2d 1, 14 (D.Mass. 2004).  As the Court in L'ggrke, supra., observed:

> [T]here is nothing in the Act's language, structure or legislative history from which a congressional intent to provide such a remedy can be implied.  No provision provides for student enforcement or entitlement to civil damages ... To imply a private right on the part of a student would conflict with the enforcement powers of the Secretary and thus would be inconsistent with the underlying purpose of the statute.

---

³ Article II, Section 1, of the Constitution of the Commonwealth prohibits, among other things, discrimination on account of race, while section 7 guarantees due process and the equal protection of the laws and section 8 establishes the right to be protected by law against abusive attacks on a person's honor, reputation and private or family life.

CIVIL 04-2279CCC                                            8

It necessarily follows that plaintiff's fourth cause of action also fails to state a claim for which relief may be granted in this Court.

As a fifth cause of action, plaintiff attempts to reassert the alleged violations to the HEA as breach of obligations incurred by UAG which are supposedly actionable as a tort claim under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141. In support of this hybrid claim, plaintiff relies on the opinion by the Supreme Court of Puerto Rico in <u>Bonilla v. Chardón</u>, 118 D.P.R. 599 (1987), which he reads as establishing that "a plaintiff could bring an action for damages against a party who failed to comply with the obligations imposed by a federal or local law even when that law did not provide for a private cause of action or did not confer a remedy in damages." Motion Complying With Order to Show Cause (docket entry 9), at p. 7.

Plaintiff misreads the holding of <u>Bonilla</u>. In that case, a group of handicapped students brought suit against the Commonwealth for its failure to comply with a local law which required it to provide them with special education. While the law only established an administrative procedure to seek the enforcement of its provisions, the Puerto Rico Supreme Court concluded that the existence of said administrative procedure implied that it was also subject to judicial review. <u>Id.</u>, at p. 609. The Court also held that while the law did not expressly provide for a remedy of damages, these could be sought either under the federal Civil Rights Act or Article 1802 under the theory that the failure to provide special education as mandated by the applicable federal and local laws violated the students' right to a due process of law. <u>Id.</u>, at pp. 611-12. In essence, then, the law at issue in <u>Bonilla</u> did provide for a private cause of action, albeit not for a remedy of damages, which the Court then allowed to be recovered as part of a claim for due process violation under 42 U.S.C. §1983 and Article 1802.

The HEA, however, does not allows for the institution of a private cause of action at all. As stated above, only the Secretary of Education has authority to seek the enforcement of its provisions. <u>See</u> 20 U.S.C. §§ 1070(b), 1071, 1082, 1094; 34 C.F.R. §§5668.84-.98.

CIVIL 04-2279CCC                                         9

Still, we do not rule out the possibility that in certain instances a private party, although not permitted to institute an enforcement or remedial action under the HEA, may still rely on the violations of its provisions or regulations to pursue a state law claim.  But we do not think this is such a case.  For one thing, the HEA violations which plaintiff imputes to UAG, even if they occurred, did not prevent him from obtaining the benefit that the statute sought to provide: loans to students who might not otherwise have access to funds for post-secondary education.  See e.g. 20 U.S.C. § 1071(a)(1).  After all, UAG's failure to notify plaintiff of the change in its curriculum did not prevent him from receiving the federal students loan to which he was otherwise entitled, as he has admitted that UAG certified to the lender that he had met all the academic requirements and that the lender, in turn, disbursed to him the money necessary to cover his tuition for the sixth (second half 2004) and seventh (first half 2005) semesters of study.[4]  Contrary to the students in Bonilla, then, plaintiff obtained the benefit that the HEA sought to provide, i.e. student loans, so no actual injury resulted to him under the HEA from the purported violation of its provisions by UAG.

In view of the above, plaintiff's fifth cause of action also fails to state a claim for which relief may be granted in this Court.

Finally, as a sixth cause of action first raised in the Amended Complaint, plaintiff alleges that once UAG was served with process in this action it informed the Mexican immigration authorities about his failure to comply with all its academic requirements and that these

---

[4] As plaintiff stated in its Motion Complying With Order to Show Cause (docket entry 9), at p. 6:

> the PPA mandates Defendant UAG to make various certifications to the lender as a condition precedent to the disbursement of the federal loans, one of which is that the student has met all of the academic requirements to enroll in the semester that will be paid with the federal financial assistance.  In early July 2004, Defendant submitted the required certification, which prompted the lender to disburse more than $18,000.00 to pay the full tuition of the Plaintiff's sixth semester of study, that began on July 18, 2004, as well as his seventh semester of study, scheduled to begin next January.

CIVIL 04-2279CCC                                                    10

authorities, as a result, cancelled his student visa.    Amended Complaint (docket entry 8), at pp. 12-12, ¶¶ 10.2-10.8.  Plaintiff avers that UAG did this to retaliate against him for the filing of this action, and claims that this action violated "obligations imposed by the Higher Education Act, Article II, Sections 1, 7 and 8 of the Puerto Rico Constitution, and Article 1802 of Puerto Rico's Civil Code." Id., at p. 13, ¶ 10.9.  For the reasons stated above when discussing the viability of plaintiff's fourth and fifth causes of action, we fail to see how these facts state a claim for relief under the HEA.  As these alleged retaliatory actions took place in Mexico, neither the Constitution nor the laws of Puerto Rico could serve him as a basis for relief. Simply put, plaintiff's sixth cause of action also fails to state a claim for which relief may be granted in this Court.

We need go no further.  While plaintiff's factual allegations suggest that he might have suffered a wrong, it is plainly obvious that he chose to seek redress for it under inapplicable laws and/or in the incorrect forum.  Suffice to say that his allegations, as pled in this Court, fail to state a claim for which relief may be granted.

Accordingly, and for the reasons stated, the Court RULES as follows on the pending motions it has considered in, or that are related to, this Opinion and Order: plaintiff's Motion Complying With Order to Show Cause and Reiterating Request for Preliminary Injunction (**docket entry 9**) is NOTED; defendant's Motion to Dismiss Based on the Doctrine of Forum Non Conveniens (**docket entry 12**) is MOOT; plaintiff's Motion Supplementing Opposition to Motion to Dismiss (**docket entry 17**) is NOTED; defendant's Motion to Correct Choice of Electronic Event for Filing of Motion for Leave to Reply to Plaintiff's Opposition to Motion to Dismiss Pursuant to Rule 12(b)(3) and (6) (**docket entry 19**) is GRANTED; plaintiff's Supplemental Opposition to Motion to Dismiss (**docket entry 22**) is NOTED; and defendant's

CIVIL 04-2279CCC                              11

Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)3 and (6) (**docket entry 14**) is GRANTED.  Judgment will be entered DISMISSING this action for failure to state claims upon which relief can be granted.

    SO ORDERED.

    At San Juan, Puerto Rico, on July 12, 2005.

                                                  S/CARMEN CONSUELO CEREZO
                                                  United States District Judge